IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

BEATRICE L. WOODWARD,
CALANDRA McCABE, and all
others similarly situated

        Plaintiffs,

vs.                                                                      No. CIV 09-0719 JB/RHS

KENNETH L. SALAZAR, Secretary,
DEPARTMENT OF THE INTERIOR,

        Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Defendant's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1) and Memorandum in Support, filed January 15, 2010 (Doc. 15). The Court held a hearing on March 1, 2010. The primary issue is whether Plaintiffs Beatrice L. Woodward and Calandra McCabe's failure to treat their discrimination claims as class-action claims while exhausting administrative remedies requires the Court to dismiss the class claims for lack of jurisdiction. The Court concludes that the Plaintiffs' failure to exhaust administrative remedies as to the class claims bars the Court from exercising jurisdiction over those claims, and finds no sound basis for considering the exhaustion of administrative remedies as to the class claims futile. The Court thus grants the Defendant Kenneth L. Salazar's motion in part. Because the Court is dismissing those claims for lack of subject-matter jurisdiction, however, the Court dismisses them without prejudice.

## FACTUAL BACKGROUND

Woodward and McCabe assert that they are both Native Americans of Navajo race and

ethnicity, and members of the Navajo Tribe and the Navajo Nation.  See First Amended Complaint of Discrimination and Petition for Class Action Seeking Monetary Damages and Injunctive Relief ¶ 1, at 1, filed August 11, 2009 (Doc. 4)("First Amended Complaint").  Before the Plaintiffs initiated this action, Woodward was an Education Line Officer with the Bureau of Indian Affairs ("BIA"), working in the Bureau of Indian Education ("BIE").  See First Amended Complaint ¶¶ 5, 19, at 2, 7; Defendant's Answer ¶¶ 5, 19, at 2, 4, filed November 13, 2009 (Doc. 10).  Woodward was forced to retire when she was given an ultimatum directing her either to resign or to accept a reassignment to Portland, Oregon.  See First Amended Complaint ¶¶ 5, 20, at 2, 7.  The Plaintiffs state that such reassignment was "part of a pattern where Navajo Education Line Officers (Program Administrators) were removed from supervision of Navajo BIA schools and replaced with non-Navajo Education Line Officers."  Id. ¶ 22, at 7.  Woodward was also threatened with suspension for allegedly violating BIA protocols, but the Plaintiffs contend that such accusations were a pretext to force her to retire so that BIE could replace her with a non-Navajo.  See First Amended Complaint ¶ 24, at 8.

McCabe is an employee of the Bureau of Indian Affairs, working as an architect in the Office of Facilities, Management and Construction ("OFMC").  First Amended Complaint ¶¶ 1, 6, at 1, 3.  The Plaintiffs assert that McCabe was denied employment advancement opportunities in OFMC.  See id. ¶ 6, at 3.  She has applied for multiple project-management jobs, for which she is qualified, and has been consistently rejected.  See id. ¶ 39, at 11.  She has also requested training and education to make her more competitive for such project-management jobs, but those requests have likewise been rejected.  See id.  The Plaintiffs argue that other, non-Navajo employees have been given the opportunities that McCabe, because she is Navajo, was denied.  See id. ¶ 45, at 12.

On November 6, 2006, Woodward filed a formal Complaint of Discrimination with the

United States Department of the Interior.  See U.S. Department of the Interior Complaint of Discrimination (dated November 6, 2006), filed January 15, 2010 (Doc. 15-1)("Woodward Complaint").  In her Complaint, Woodward claimed that her employer discriminated against her on the basis of her race -- Indian, Navajo -- and age.  See Woodward Complaint at 1 (selecting Race and Age in response to the inquiry: "Basis(es) for believing you were discriminated against?").[1] Woodward's Complaint stated the following allegation:

> I was forced to retire.  I was given this election in lieu of reassignment to Portland, Oregon.  Other Two affected GS-15's who are younger were posted to their own agencies in this reorganization.  I, The only Navajo was the only person posted away from my home area.  This mechanism was used to force tenure ELO (Navajo) to retire or move to Portland, Oregon where religious (tradition) cannot be used because it is outside the 4 sacred mountain.

Id.  The Complaint did not expressly include class allegations.  The Final Agency Decision on Woodward's Complaint of Discrimination stated that the following claim was accepted for decision: "Whether on February 17, 2007, Complainant was subjected to constructive discharge on the basis of race (American Indian, Navajo) and age . . . when she was forced to retire from her position." Final Agency Decision at 1 (dated May 20, 2009), filed January 15, 2010 (Doc. 15-2).

On January 24, 2006, McCabe filed a formal Complaint, which included an extensive four-page narrative description of the alleged discrimination and its negative effects.  See U.S. Department of the Interior Complaint of Discrimination (dated January 24, 2006), filed January 15, 2010 (Doc. 15-3)("McCabe Complaint").  The Administrative Judge found no discrimination, and a Final Order by the United States Department of the Interior adopted that finding.  See Decision Without a Hearing (dated January 24, 2008), filed January 15, 2010 (Doc. 15-4).  In her Complaint

---

[1] Woodward has apparently abandoned her claim that she was discriminated against on the basis of her age because the Plaintiffs' First Amended Complaint does not raise it as an issue.

of Discrimination, McCabe asserted she had been retaliated against for having previously made an informal complaint about alleged discrimination and harassment.  See McCabe Complaint at 2, 5 ("I have been harassed, intimidated, and discriminated against in my work environment . . . in apparent retaliation for filing a previous harassment and discrimination complaint on January 30, 2003 and a resulting fact finding report on August 4, 2003[.]").  McCabe's Complaint also alleges that she was subjected to bias and prejudice in performance assessments, and wrongfully accused of failing to satisfy job requirements.  See id. at 5.  McCabe's Complaint of Discrimination did not include class allegations.  The Decision Without a Hearing, dated January 24, 2008, stated that the issues being addressed were as follows:

> Considering all the evidence in the light most favorable to Complainant, has Calandra McCabe proven, by a preponderance of the evidence, that the Agency intentionally retaliated against her because of her prior EEO activity when on October 25, 2005, she was denied an overnight stay for an early morning out-of-town meeting on October 28, 2005, and on November 21, 2005, she was reprimanded for not requesting comp time in advance of travel?

Decision Without a Hearing at 2.[2]  The administrative judge concluded that McCabe had not proved, by a preponderance of the evidence, that her employer retaliated against her when it engaged in the challenged conduct.  See id. at 3.[3]

At the administrative hearing, several witnesses' testimony sought to establish discriminatory animus on the part of the agency by alleging discrimination against Navajos generally.  See Plaintiffs' Response to Defendant's Rule 12(b)(1) Motion to Dismiss at 4-7, filed February 1, 2010 (Doc. 16)("Response")(citing the Final Agency Decision, attached as Exhibit 1).  Notwithstanding

---

[2] The Court's page numbering refers to the pages of Defendant's Exhibit D, which contains excerpts of the Administrative Judge's decision.  The quotation comes from page 3 of the decision.

[3] The Court derives this sentence from page 3 of Exhibit D, which is page 7 of the Administrative Judge's opinion.

that testimony, the administrative judge held that there was insufficient evidence of discriminatory animus.  See Final Agency Decision at 9, filed February 1, 2010 (Doc. 16-2)("[T]he Complainant [Woodward] has not presented any evidence to indicate that the Agency officials harbored a discriminatory *animus* toward members of the Complainant's protected groups.")(emphasis in original).[4]  The Plaintiffs raised similar issues in their filings with the Merit Systems Protection Board.  See Response at 7-8; Appellant's Response to Board Order, filed February 1, 2010 (Doc. 16-2).

## PROCEDURAL BACKGROUND

On August 11, 2009, the Plaintiffs filed their First Amended Complaint of Discrimination and Petition for Class Action Seeking Monetary Damages and Injunctive Relief.  See Doc. 4.[5] Woodward and McCabe filed this action seeking "declaratory, injunctive and other equitable relief from discrimination in employment against the Plaintiffs and others similarly situated on account of the race and/or ethnicity, Navajo, in violation of Title VII . . . ."  First Amended Complaint ¶ 2, at 1.  The class they purport to represent includes: (i) all current and former BIA employees of Navajo race who were injured by the alleged discriminatory practices of the BIA; and (ii) all

---

[4] Again, the Court's citations to the Final Agency Decision cites to the page number of the Exhibit that the Plaintiffs provided.  The text is on page 16 of the Final Agency Decision, which is page 9 of the Plaintiffs' Exhibit 1.

[5] The Plaintiffs' original complaint was filed on July 23, 2009.  The First Amended Complaint was filed 19 days after the original complaint, and before Salazar filed an Answer, so the amendment was allowed as a matter of course under rule 15(a)(1) of the Federal Rules of Civil Procedure.  There is no document that outlines the differences between the original complaint and the First Amended Complaint, but the differences appear to be relatively minor.  The only change that was obvious from a cursory side-by-side comparison of the two pleadings was an extension of the jurisdictional allegations in paragraph 4.  Compare Complaint of Discrimination and Petition for Class Action Seeking Monetary Damages and Injunctive Relief ¶ 4, at 2, filed July 23, 2009 (Doc. 1), with First Amended Complaint ¶ 4, at 2.

employees of Navajo race or ethnicity of Navajo grant schools who were subjected to adverse employment actions directed by the BIA/BIE employees and/or supervisors.  See First Amended Complaint ¶ 7, at 3.  The class expressly excludes "(1) any agency or entity which Defendant either directs or controls; (2) non-Navajo employees of the BIA; and (3) the legal representatives of any excluded party."  Id.  The First Amended Complaint appears to allege only one count, which states:

> A systematic and invidious pattern of discrimination exists within the BIA against Navajos which ranges from unfair and discriminatory job promotions of non-Navajos, discriminatory job selection, adverse employment actions, and mismanagement of funding for projects meant to benefit the Navajos.  Plaintiffs seek affirmative and injunctive relief to eliminate such discrimination and afford all class members equal employment opportunities.

First Amended Complaint ¶ 49, at 13.

On January 15, 2010, Salazar, the Secretary of the United States Department of the Interior, filed this motion pursuant to rule 12(b)(1) of the Federal Rules of Civil Procedure, asking the Court to dismiss Plaintiff's First Amended Complaint with prejudice for lack of subject-matter jurisdiction.[6]  Salazar argues that the Court lacks jurisdiction to entertain the Plaintiffs' class-action claims because the Plaintiffs failed to exhaust their administrative remedies with respect to the class claims.  See Motion at 7-13.  He asserts that, because the Plaintiffs' administrative actions raised individual claims and did not state that they were being brought in a representative capacity, the exhaustion requirement is satisfied in this Court only insofar as the Plaintiffs assert individual claims.  See id.

The Plaintiffs responded on February 1, 2010.  They argue that, while Woodward's Complaint did not use the word "class" or "class action," it did "served to provide notice to

_____

[6] Before the Salazar filed his motion, his counsel contacted the Plaintiffs' counsel and learned that the Plaintiffs oppose this motion.  See Motion at 1.

Defendant that a group of employees had been adversely affected by agency personnel management policy and/or practice that discriminated against a group on the basis of their race and/or ethnicity." Response at 4. The Plaintiffs thus assert that, because Salazar could reasonably have expected that the claims would give rise to a class action, the Plaintiffs have exhausted their administrative remedies with respect to the class claims. See Response at 8-13. They also argue that they were not required to exhaust administrative remedies with respect to the class because such exhaustion would be futile. See Response at 13-14. The Plaintiffs thus ask the Court to deny Salazar's motion and allow the case to proceed as a class action.

At the hearing, the parties reiterated many of the arguments in their respective briefs. Phyllis Dow, Salazar's attorney, argued that the Plaintiffs failed to exhaust their administrative remedies with respect to their class-action claims and that the Court must therefore dismiss the class-action claims. See Transcript of Hearing at 2:4-23 (taken March 1, 2010)("Tr.")(Dow).[7] Ms. Dow conceded, however, that, if the Court grants the motion, the Plaintiffs' individual claims could continue to go forward -- i.e., this motion is not dispositive of the whole case. See Tr. at 3:3-4:8 (Court, Dow). Jeffrey Dahl, the Plaintiffs' attorney, argued that the standard is not whether the Plaintiffs made class-action allegations when pursuing their administrative remedies, but whether the "the class issues could reasonably have [been] expected to grow out of the Plaintiff's administrative complaints." Tr. at 4:14-20 (Dahl). Mr. Dahl cited the Court to case law from the United States Courts of Appeals for the Fifth and Ninth Circuits, from which he argues the Court should fashion a more nuanced rule regarding exhaustion of administrative remedies in the federal employment-law context. See Tr. at 5:3-6:15 (Court, Dahl). He then argued that the detailed

---

[7] The Court's citations to the transcript of the hearing refers to the court reporter's original, unedited version. Any final transcript may contain slightly different page and/or line numbers.

regulatory scheme that governs the administrative process, which the Plaintiffs must exhaust before bringing suit in federal court, could be construed to allow the Plaintiffs to raise the class-action issue once in federal court, so long as "class implications are raised in the claim." Id. at 6:16-8:2 (Court, Dahl). He also asserts that class implications were raised in Woodward and McCabe's Complaints, and that the agency determinations contemplated potential class claims. See Tr. at 8:3-11:16 (Dahl).

## LEGAL STANDARD FOR MOTIONS TO DISMISS UNDER RULE 12(b)(1)

"Federal courts are courts of limited jurisdiction; they are empowered to hear only those cases authorized and defined in the Constitution which have been entrusted to them under a jurisdictional grant by Congress." Henry v. Office of Thrift Supervision, 43 F.3d 507, 511 (10th Cir. 1994). A plaintiff generally bears the burden of demonstrating the court's jurisdiction to hear his or her claims. See McNutt v. Gen. Motors Acceptance Corp., 298 U.S. 178, 182 (1936)("[T]he party invoking federal jurisdiction bears the burden of establishing its existence."); Montoya v. Chao, 296 F.3d 952, 955 (10th Cir. 2002); Byrd v. EPA, 174 F.3d 239, 243 (D.C. Cir. 1999); Miller v. United States, 710 F.2d 656, 662 (10th Cir. 1983). Rule 12(b)(1) of the Federal Rules of Civil Procedure allows a party to raise the defense of the court's "lack of jurisdiction over the subject matter" by motion. Fed. R. Civ. P. 12(b)(1). The United States Court of Appeals for the Tenth Circuit has held that motions to dismiss for lack of subject-matter jurisdiction "generally take one of two forms: (1) a facial attack on the sufficiency of the complaint's allegations as to subject matter jurisdiction; or (2) a challenge to the actual facts upon which subject matter jurisdiction is based." Ruiz v. McDonnell, 299 F.3d 1173, 1180 (10th Cir. 2002). These two forms of attack differ.

On a facial attack, a plaintiff is afforded safeguards similar to those provided in opposing a rule 12(b)(6) motion: the court must consider the complaint's allegations to be true. See Ruiz v. McDonnell, 299 F.3d at 1180; Williamson v. Tucker, 645

> F.2d 404, 412 (5th Cir. 1981). But when the attack is aimed at the jurisdictional facts themselves, a district court may not presume the truthfulness of those allegations. A court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1). In such instances, a court's reference to evidence outside the pleadings does not convert the motion to a Rule 56 [summary-judgment] motion.

Alto Eldorado Partners v. City of Santa Fe, No. CIV 08-0175 JB/ACT, 2009 WL 1312856, at **8-9

(D.N.M. Mar.11, 2009)(Browning, J.)(citations omitted). As the United States Court of Appeals for

the Fifth Circuit has stated:

> [T]he trial court may proceed as it never could under 12(b)(6) or Fed. R. Civ. P. 56. Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction -- its very power to hear the case -- there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. In short, no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims.

Williamson v. Tucker, 645 F.2d 404, 412-13 (5th Cir. 1981)(quoting Mortenson v. First Fed. Sav.

& Loan Ass'n., 549 F.2d 884, 891 (3d Cir. 1977)).

When making a rule 12(b)(1) motion a party may go beyond the allegations in the complaint

to challenge the facts upon which jurisdiction depends, and may do so by relying on affidavits or

other evidence properly before the court. See New Mexicans for Bill Richardson v. Gonzales, 64

F.3d 1495, 1499 (10th Cir. 1995); Holt v. United States, 46 F.3d 1000, 1003 (10th Cir. 1995). A

court thus has broad discretion to consider affidavits or other documents to resolve disputed

jurisdictional facts under rule 12(b)(1). See Holt v. United States, 46 F.3d at 1003. In those

instances, a court's reference to evidence outside the pleadings does not necessarily convert the

motion to a rule 56 motion for summary judgment. See Holt v. United States, 46 F.3d at 1003

(citing Wheeler v. Hurdman, 825 F.2d 257, 259 n.5 (10th Cir. 1987)). Where, however, the court

determines that jurisdictional issues raised in rule 12(b)(1) motion are intertwined with the case's

merits, the court should resolve the motion under either rule 12(b)(6) or rule 56.  See Franklin Sav. Corp. v. United States, 180 F.3d 1124, 1129 (10th Cir. 1999); Tippet v. United States, 108 F.3d 1194, 1196 (10th Cir. 1997).  "When deciding whether jurisdiction is intertwined with the merits of a particular dispute, 'the underlying issue is whether resolution of the jurisdictional question requires resolution of an aspect of the substantive claim.'"  Davis ex rel. Davis v. United States, 343 F.3d 1282, 1296 (10th Cir. 2003)(quoting Sizova v. Nat'l Inst. of Standards & Tech., 282 F.3d 1320, 1324 (10th Cir. 2002)).

### RELEVANT LAW REGARDING EXHAUSTION OF TITLE VII CLAIMS

"Title VII of the Civil Rights Act of 1964 forbids employment discrimination based on race, color, religion, sex, or national origin."  Brown v. Gen. Servs. Admin., 425 U.S. 820, 825 (1976)(citing 42 U.S.C. §§ 2000e-2 and 2000e-3).

> Title VII of the Civil Rights Act of 1964 prohibits an employer from failing or refusing to hire or discharging any individual, or otherwise discriminating against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.

Farley v. Leavitt, No. CIV 05-1219 JB/LFC, 2007 WL 6364329, at *6 (D.N.M. Dec. 31, 2007) (Browning, J.)(internal quotes and alterations omitted).  With the 1972 amendments to the statute, the protection of Title VII applies to federal employees as well as employees of private concerns. See Brown v. Gen. Servs. Admin., 425 U.S. at 825-26 (citing 42 U.S.C. § 2000e(b)).  For a federal court to have jurisdiction over a private action under Title VII, the federal employees wishing to pursue such discrimination claims must first exhaust their administrative remedies.  See Brown v. Gen. Servs. Admin., 425 U.S. 820, 832-33 (1976).  See DeWalt v. Meredith Corp., 288 Fed. Appx. 484, 490 (10th Cir. 2008)("Failure to exhaust administrative remedies -- such as a refusal to cooperate with an EEOC investigation -- is a jurisdictional bar to suit."); Alcivar v. Wynne, 268 Fed.

Appx. 749, 753 (10th Cir. 2008)("The Tenth Circuit has consistently held that 'exhaustion . . . is a jurisdictional prerequisite to suit under Title VII -- not merely a condition precedent to suit.'")(quoting Shikles v. Sprint/United Mgmt. Co., 426 F.3d 1304, 1317 (10th Cir. 2005)); Sizova v. Nat'l Inst. of Standards & Tech., 282 F.3d at 1325 ("We have held that the exhaustion of administrative remedies is a jurisdictional prerequisite to suit under Title VII."); Woodman v. Runyon, 132 F.3d 1330, 1341 (10th Cir. 1997)("[E]xhaustion of administrative remedies is a jurisdictional prerequisite to instituting a Title VII action in federal court.")(quoting Khader v. Aspin, 1 F.3d 968, 970 (10th Cir. 1993)); Johnson v. Orr, 747 F.2d 1352, 1356 (10th Cir. 1984) ("The Tenth Circuit has held that exhaustion of administrative remedies is a jurisdictional prerequisite to suit under [42 U.S.C.] § 2000e-16.")(citing Sampson v. Civiletti, 632 F.2d 860, 862 (10th Cir. 1980), and Bragg v. Reed, 592 F.2d 1136, 1138 (10th Cir. 1979)); Farley v. Leavitt, 2007 WL 6364329, at *6 ("A plaintiff generally must exhaust his or her administrative remedies before pursuing a Title VII claim in federal court.").[8]  And, while the exhaustion-of-remedies requirement "can often be what its name implies, exhausting," Sampson v. Civiletti, 632 F.2d at 863, it serves

---

[8] The Tenth Circuit has mentioned some concern whether failure to exhaust administrative remedies is still a jurisdictional prerequisite to suit after the Supreme Court's decision in Jones v. Bock, 549 U.S. 199 (2007).  See, e.g., Alcivar v. Wynne, 268 Fed. Appx. at 753 (noting that "Jones v. Bock held that under the PLRA [Prison Litigation Reform Act] exhaustion is an affirmative defense to be raised by the defendant and not a jurisdictional pleading requirement," but finding it was "not . . . necessary to decide whether exhaustion is jurisdictional under Title VII after Jones."); McQueen v. Colo. Springs Sch. Dist. No. 11, 488 F.3d 868, 874 (10th Cir. 2007)("Although courts have repeatedly referred to the exhaustion requirement as *jurisdictional*, . . . recent Supreme Court jurisprudence in other contexts casts doubt on that characterization[.]")(citations omitted, emphasis in original).  Neither party in this case argues that administrative exhaustion is not still a jurisdictional prerequisite.  Moreover, a recent unpublished Tenth Circuit decision indicates that Jones v. Bock did not demote the exhaustion requirement from a jurisdictional prerequisite to an affirmative defense, at least in the Title VII context.  See Martinez v. Target Corp., No. 09-2112, 2010 WL 2616651, at *3 n.2 (10th Cir. July 1, 2010)(slip op.)(Kelly, Porfilio, O'Brien, JJ.) ("Martinez is not proceeding under the PLRA; Bock is inapposite.  She does not point us to a single decision -- of this or any other court -- applying Bock in the context of a Title VII or ADEA case.").

important purposes, such as giving the agency notice of the alleged violation and allowing the agency an opportunity to voluntarily remedy it, see Woodman v. Runyon, 132 F.3d at 1342 ("The twofold purpose of the exhaustion requirement is to give notice of an alleged violation to the charged party and to give the administrative agency an opportunity to conciliate the claim in furtherance of Title VII's goal of securing voluntary compliance."); Khader v. Aspin, 1 F.3d at 971 ("The requirement that a Title VII claimant exhaust administrative remedies serves the purpose of 'giv[ing] the agency the information it needs to investigate and resolve the dispute between the employee and the employer.'")(quoting Wade v. Sec'y of Army, 796 F.2d 1369, 1377 (11th Cir. 1986)); Sampson v. Civiletti, 632 F.2d at 862-63 ("The requirement that discrimination complaints be first presented to an agency rather than a court encourages informal, conciliation-oriented resolution of disputes and reduces the burden on federal courts.")(citing Richerson v. Jones, 572 F.2d 89, 97 (3d Cir. 1978)).

The most common method of administrative exhaustion for federal employees is the individual EEO complaint process.  The regulations promulgated by the Equal Employment Opportunity Commission, see 29 C.F.R. Part 1614, and the Commission's Management Directive 110 govern the initial EEO complaint process.  Pre-complaint counseling is the first step in that process, see 29 C.F.R. § 1614.105, requiring the aggrieved employee to consult with an agency counselor within forty-five days of the alleged discriminatory act or, in the case of a personnel action, within forty-five days of the effective date of the action, see id.  In 1977, in response to judicial criticism, "the Civil Service Commission promulgated specific class administrative remedies [which] created a detailed scheme markedly different than the administrative mechanism for addressing individual discrimination claims." Gulley v. Orr, 905 F.2d 1383, 1384 (10th Cir. 1990).  The class administrative process, embodied in 29 C.F.R. § 1614.204, requires that the applicant first

-12-

engage in counseling, see 29 C.F.R. § 1614.204(b), then timely file a class complaint with the agency which: (i) identifies the policy or practice adversely affecting the class; (ii) identifies the specific action or matter affecting the class agent; (iii) alleges the class is so numerous that a consolidated complaint filed on behalf of all members would be impractical; (iv) alleges that there are questions of fact common to the class members; (v) alleges that the claims of the class' agent are typical of the claims of the class' members; and (vi) alleges that the class agent or the agent's counsel will fairly and adequately protect the interests of the class.  See 29 C.F.R. §§ 1614(a)(2) & (c)(1).  There are also other specific requirements for processing class administrative complaints, such as notification to all class members, see 29 C.F.R. §§ 1614.204(e) & (g)(4), and findings of the administrative judge whether class relief would be appropriate, see 29 C.F.R. § 1614.204(i).

The Tenth Circuit draws stark distinction between the exhaustion process for individual claims and the exhaustion process for class claims.  See Gulley v. Orr, 905 F.2d at 1384 ("[T]he Civil Service Commission promulgated specific class administrative remedies [which] created a detailed scheme markedly different than the administrative mechanism for addressing individual discrimination claims.").

> In light of the distinct administrative mechanism created specifically to address class claims of discrimination, the weight of authority addressing this issue has held that exhaustion of individual administrative remedies is insufficient to commence a class action in federal court; rather, one of the named plaintiffs must have exhausted class administrative remedies.

Gulley v. Orr, 905 F.2d at 1385 (citing McIntosh v. Weinberger, 810 F.2d 1411, 1423-25 (8th Cir. 1987); Wade v. Sec'y of Army, 796 F.2d 1369, 1373 (11th Cir. 1986); Lewis v. Smith, 731 F.2d 1535, 1540 (11th Cir. 1984); Patton v. Brown, 95 F.R.D. 205, 207-08 (E.D. Pa. 1982); Johnson v. Bond, 94 F.R.D. 125, 127 (N.D. Ill. 1982); Downes v. Adams, 33 Fair Empl. Prac. Cas. (BNA) 929, 930-31 (E.D.N.Y. 1982); Williams v. U.S. Postal Serv., 33 Fair Empl. Prac. Cas. (BNA) 533,

534-35 (N.D. Ga. 1983); Moore v. Orr, 33 Fair Empl. Prac. Cas. (BNA) 523 (D. Colo. 1982);

Thomas v. U.S. Postal Serv., 33 Fair Empl. Prac. Cas. (BNA) 521, 522-23 (N.D. Cal. 1981)).  The

Tenth Circuit joined this "weight of authority" in 1990 and held that "class action claims [are] barred

[by] failure to exhaust class administrative remedies."  Gulley v. Orr, 905 F.2d at 1385.  Since

Gulley v. Orr, the Tenth Circuit has maintained that exhaustion of administrative remedies on

individual claims will not suffice to satisfy the exhaustion requirement as to class claims.  See

Ransom v. U.S. Postal Servs., 170 Fed. Appx. 525, 528 (10th Cir. 2006)("The brief reference made

[in the administrative complaint] to the maltreatment of other employees did not qualify as a class

complaint.  Therefore, any request for counseling pursuant to those claims was for individual

counseling only and cannot satisfy the counseling requirement for class claims."); Barrett v.

Rumsfeld, 158 Fed. Appx. 89, 92 (10th Cir. 2005)("Plaintiffs' individual agency complaints, if any,

are inadequate to support jurisdiction over their class complaint because administrative exhaustion

of individual Title VII claims is not sufficient to exhaust administrative remedies for class

claims[.]"); Monreal v. Potter, 367 F.3d 1224, 1233 (10th Cir. 2004)("[W]e have held that *class*

claims cannot be exhausted through an *individual* complaint[.]")(emphasis in original); Persons v.

Runyon, 172 F.3d 879 (Table), 1999 WL 104427, at *2 (10th Cir. Mar. 2, 1999)("[W]e have

consistently held that 'exhaustion of individual administrative remedies is insufficient to commence

a class action in federal court . . . one of the named plaintiffs must have exhausted *class*

administrative remedies")(quoting Gulley v. Orr, 905 F.2d at 1385)(emphasis in Persons v. Runyon);

Belhomme v. Widnall, 127 F.3d 1214, 1217 (10th Cir. 1997)("A federal employee must exhaust his

class action claim with the EEOC before raising it in federal court, and exhaustion of an individual

Title VII claim is not sufficient to exhaust a class action claim.").  The converse, however, is not

necessarily true.  If the individual claim was included in the administrative process seeking class-

-14-

wide relief -- e.g., the class representative, whose individual claim is presented to establish that he

or she is qualified to represent the class -- exhaustion of class administrative remedies can constitute

exhaustion of individual administrative remedies as well.  See Monreal v. Potter, 367 F.3d at

1231-34 ("For these reasons, we conclude that Plaintiffs exhausted their individual claims through

presentation in the class complaint[.]").

## ANALYSIS

Salazar asks the Court to dismiss the Plaintiffs' class-action claims for lack of subject-matter

jurisdiction, because the Plaintiffs failed to exhaust their class administrative remedies before filing

this action in federal court.  The Plaintiffs advance several arguments why they successfully

exhausted class administrative remedies.  In the alternative, they argue that they need not exhaust

administrative remedies because such exhaustion would be futile.  The Court concludes that

administrative exhaustion of the class claims was necessary and that the Plaintiffs' exhaustion of

individual administrative remedies did not satisfy that requirement.

## I.     THERE IS NO DISPUTE THAT NEITHER PLAINTIFF FOLLOWED THE ADMINISTRATIVE EXHAUSTION SCHEME FOR CLASS CLAIMS.

As an initial matter, the Court finds that neither Woodward nor McCabe exhausted the class-

action administrative process that 29 C.F.R. § 1614.204 sets out.  The Plaintiffs do not contest this

issue.  It is the basis of Salazar's motion, see Motion at 10-13, and the Plaintiffs' argument is not

that they exhausted their class administrative remedies, but rather that the individual administrative

remedies that Woodward and McCabe each exhausted were sufficient to put Salazar on notice that

a class action might be asserted against him.  See Response at 2 ("Plaintiffs are not required to

exhaust a class complaint administratively because class issues could reasonably be expected to

grow out of Plaintiffs' individual administrative complaints and Defendant engaged in a class

investigation in regard to Plaintiff Woodward's individual administrative complaint."). The Court will explore the Plaintiffs' arguments below, but begins by holding that the Plaintiffs did not exhaust their class administrative remedies.

## II.   THE TENTH CIRCUIT HAS IMPLICITLY REJECTED THE "REASONABLE NOTICE OF POSSIBLE CLASS CLAIMS" TEST THAT THE PLAINTIFFS PROPOSE.

The Plaintiffs' primary argument why the Court should not dismiss their class-action claims is that the individual EEO complaints that Woodward and McCabe filed put Salazar on notice that the eventual district-court action brought against him might be a class action. See Response at 4. The Plaintiffs argue that, because Salazar could reasonably have expected that the individual claims would give rise to a class action, the Plaintiffs have sufficiently exhausted their administrative remedies and they may bring class claims. Salazar opposes this argument. The Court finds that Tenth Circuit case law forecloses the nuanced rule that the Plaintiffs propose.

The Plaintiffs ask the Court to adopt a new exhaustion rule in Title VII class-action cases. They suggest that the Court should not ask whether the Plaintiffs have exhausted class administrative remedies, but rather ask whether Salazar could reasonably foresee from the Plaintiffs' individual administrative complaints that a class action might lie. See Tr. at 4:14-6:15 (Court, Dahl). Such a rule would be at odds with several Tenth Circuit cases addressing the class/individual exhaustion problem. The Court thus rejects the Plaintiffs' argument.[9]

_____

[9] The Court acknowledges that some of the Plaintiffs' authority from other circuits suggests that courts should take on this more subtle and fact-intensive inquiry in determining whether to bar a plaintiff from moving forward on a Title VII class action based on a failure to exhaust class administrative remedies. See Paige v. California, 102 F.3d 1035, 1041 (9th Cir. 1996)("[A] district court [has] jurisdiction over the plaintiffs' claim of class discrimination in promotion if that claim fell within the scope of the EEOC's *actual* investigation or an EEOC investigation which *could reasonably be expected* to grow out of the charge of discrimination.")(original alterations omitted, emphasis in original)(quoting EEOC v. Farmer Bros. Co., 31 F.3d 891, 899 (9th Cir. 1994)); Fellows

First, the Court notes that the Plaintiffs' rule has no logical end-point that does not eviscerate the class-exhaustion requirement.  Any claim that a plaintiff was discriminated against because he or she is in a protected class, by necessity, implies that there could be a class action.  If one person in that protected class is being discriminated against, and the defendant employs more than one person in that protected class, it is reasonable to assume that the other member of the class is also being discriminated against.  Moreover, the standard mechanism by which a plaintiff proves discriminatory animus is to show that others of the same protected class were likewise discriminated against, making it all the more obvious that there is the potential for a class action.  The rule would thus be that, any time the defendant employs enough members of the protected class to satisfy the numerosity requirement of rule 23, any individual Title VII complaint would put the defendant on notice that a class action could arise, and would thus obviate the class-exhaustion requirement.

Notwithstanding the above logic, the Civil Service Commission added a specific procedural

---

v. Universal Restaurants, Inc., 701 F.2d 447, 450-51 (5th Cir. 1983)("We are not persuaded by the argument that the present EEOC charge by Ms. Fellows could not support a subsequent cause of action for a class of women subjected to the same discrimination or to discrimination like or related to those described by the allegations of that initial charge."); Miller v. Baltimore Gas & Elec. Co., 202 F.R.D. 195, 207 (D. Md. 2001).  The Court, however, is bound by the law as the Tenth Circuit interprets it, and the Court can find no way to engage in the inquiry the Plaintiffs suggest and give appropriate deference to existing Tenth Circuit case law.  The Plaintiffs are welcome to present these arguments to the Tenth Circuit and try to convince it to change the law on this issue, but the Court is not at liberty to disregard the law in the Tenth Circuit as it exists today.  Moreover, Salazar distinguishes the Plaintiffs' authority on the ground that these are private-sector cases, and there is no regulatory scheme governing the exhaustion of class complaints in private-sector cases.  See Defendant's Reply to Plaintiffs' Response to Defendant's Rule 12(b)(1) Motion to Dismiss at 4-5, filed February 18, 2010 (Doc. 17)("Reply").  Indeed, the federal regulation at issue, which imposes the class-exhaustion requirement, is a section of 29 C.F.R. Part 1614, entitled "Federal Sector Equal Employment Opportunity."  See 29 C.F.R. § 1614.103(b) (listing the federal-government entities to which Part 1614 applies).  It thus appears that the requirements of 29 C.F.R. § 1614.204 would not have applied to the cases that the Plaintiffs cite.  Nevertheless, although the Tenth Circuit cases do not explicitly draw this federal-employer/private-employer distinction, the Court agrees with Salazar that "there is nothing equivocal about the rulings in [the Tenth Circuit] cases" -- they clearly require exhaustion of class administrative remedies.  Reply at 5.

requirements for individuals bringing class-action complaints against a federal employer, and the

Tenth Circuit requires exhaustion of those class administrative remedies.  Several Tenth Circuit

opinions have affirmed dismissal of Title VII class actions because no plaintiff exhausted the class

administrative remedies.  See Ransom v. U.S. Postal Servs., 170 Fed. Appx. at 528; Barrett v.

Rumsfeld, 158 Fed. Appx. at 92; Monreal v. Potter, 367 F.3d at 1233; Persons v. Runyon, 1999 WL

104427, at *2; Belhomme v. Widnall, 127 F.3d at 1217; Gulley v. Orr, 905 F.2d at 1385.  In many

of those Tenth Circuit cases, the issue was racial or ethnic discrimination, see Barrett v. Rumsfeld,

158 Fed. Appx. at 90 (race discrimination); Monreal v. Potter, 367 F.3d at 1233 (race and national-

origin discrimination); Belhomme v. Widnall, 127 F.3d at 1217 (race and national-origin

discrimination), and the discrimination presumably affected people other than the individual

claimant.  In Ransom v. United States Postal Service, for example, the plaintiff filed a class-action

complaint in federal district court, which the court dismissed for lack of subject-matter jurisdiction

because the plaintiff had failed to exhaust class administrative remedies.  See 170 Fed. Appx. at 526-

27.  The plaintiff argued that she raised her class claims in her EEO complaint.  See 170 Fed. Appx.

at 528.  In upholding the district court's decision, the Tenth Circuit rejected the plaintiff's position

and found that "[t]he brief references made to the maltreatment of other employees did not qualify

as a class complaint."  170 Fed Appx. at 528.  Citing Belhomme v. Widnall and Gulley v. Orr, the

Tenth Circuit held that "any request for counseling pursuant to those claims was for individual

counseling only and cannot satisfy the counseling requirement for class claims."  170 Fed. Appx.

at 528.  Like the complaint at issue in Ransom v. United States Postal Service, the Plaintiffs'

allegations in their individual complaints include, at most, "brief references . . . to the maltreatment

of other employees," id., and do not qualify as exhausting class administrative remedies, see

Response at 12 (arguing that Salazar was put on notice of a possible class action by testimony that

the agency "discriminates against Navajos as a group").[10] The Court thus finds that the Plaintiffs'

failure to exhaust class administrative remedies is fatal to their assertion of class claims in this suit.

III.   **THE TENTH CIRCUIT HAS NOTED, AND THE LANGUAGE OF THE RELEVANT REGULATIONS IMPLY, THAT THE CLASS ISSUES MUST BE RAISED DURING THE ADMINISTRATIVE ACTION.**

At the hearing, Mr. Dahl suggested that the structure of the relevant regulations leaves open

the possibility that a plaintiff can raise class issues whenever they become apparent, even after the

administrative process had ended and the time has come for a complaint in federal court.  See Tr.

at 6:16-8:2 (Court, Dahl).  He then argued that the Plaintiffs' administrative complaint raised class

_____

[10] The Plaintiffs argue that the Tenth Circuit has not dealt with the situation in which a defendant could reasonably know that a class action may arise.  See Response at 10-11.  The Court disagrees with the Plaintiffs' analysis of the cases it cites.  As the Court has suggested, allegations of discrimination probably put the defendant and the administrative judge on notice that class claims might lie.  After all, the concept of discrimination implies mistreatment of a class of persons.  See Black's Law Dictionary at 534 (9th ed. 2009)("**discrimination**, *n.* . . . **1.** The effect of a law or established practice that . . . denies privileges to a certain class because of race, age, sex, nationality, religion, or disability.").  It is reasonable to infer that the clarity with which class claims are implicated by the very nature of the suit is why the Tenth Circuit has not addressed this situation in the terms that the Plaintiffs propose.  Furthermore, the relevant regulations demand the plaintiffs take certain action to ensure that the defendant and the administrative judge know that the plaintiff intends to bring a class action.  Those actions include bringing a class complaint initially in the administrative process or moving for class certification at a reasonable point in the administrative process.  Requiring exhaustion of class remedies by complying with the plain language of the administrative exhaustion scheme removes uncertainty and ensures that the defendant understands the potential magnitude of the suit with which the defendant is dealing.  See Monreal v. Potter, 367 F.3d at 1233 ("[A] class claim [can] not be exhausted through an individual complaint because the agency was not sufficiently notified of the complainant's intent to raise class allegations through his filing of an individual complaint.").  Demanding class exhaustion also furthers the purposes of the exhaustion requirement, because the defendant will have more incentive to resolve the case voluntarily if it knows that it is dealing with a class action, and might be willing to take more drastic steps without the time and expense of litigation.  See Woodman v. Runyon, 132 F.3d 1330, 1342 (10th Cir. 1997)("The twofold purpose of the exhaustion requirement is to give notice of an alleged violation to the charged party and to give the administrative agency an opportunity to conciliate the claim in furtherance of Title VII's goal of securing voluntary compliance.").  Moreover, allowing plaintiffs to exhaust individual administrative remedies while only hinting at class-wide issues, and then to file a class-action complaint in federal district court, would all but render pointless the class administrative scheme that the Civil Service Commission has put in place.

implications and that the agency determination contemplated class claims.  See id. at 8:3-11:16 (Dahl).  The portion of the regulation to which Mr. Dahl refers states: "A complainant may move for class certification at any reasonable point in the process when it becomes apparent that there are class implications to the claim raised in an individual complaint."  29 C.F.R. § 1614.204(b).  He suggests that "the process" to which this sentence refers could be the entire litigation process, rather than the administrative process, and therefore it could be reasonable to raise the class issues in the district-court complaint.  See Tr. at 6:16-8:2 (Court, Dahl).

       For two reasons, the Court rejects this argument.  First, it is contrary to the regulation's plain language.  The final sentence of the subsection to which Mr. Dahl refers states: "The administrative judge shall deny class certification when the complainant has unduly delayed in moving for certification."  29 C.F.R. § 1614.204(b).  The reference to the administrative judge as the one who shall deny class certification indicates that the provision applies only to times during which the administrative judge would have jurisdiction.  That sentence would thus imply that "any reasonable point in the process" means "any reasonable point in the administrative process."  The Tenth Circuit appears to have taken this position in Belhomme v. Widnall.

       In Belhomme v. Widnall, the Tenth Circuit considered a situation similar to that in this case, in which a federal employee -- Belhomme – sued his employer under Title VII for racial and national-origin discrimination.  See 127 F.3d at 1215.  As is true in this case, Belhomme exhausted his administrative remedies as to his individual claim, then, once in federal district court, sought to promote his suit to be a class action.  See id. at 1215-16.  The district court denied Belhomme's request for class-action status.  See id. at 1217.  The Tenth Circuit found that the district court properly dismissed Belhomme's class claims because "exhaustion of an individual Title VII claim is not sufficient to exhaust a class action claim."  Id.  The Tenth Circuit implicitly considered

whether raising the class claim was timely before the district court, but determined that the district court's dismissal of Belhomme's request for class-action status was proper "because Mr. Belhomme failed to raise the [class] claim at <u>any point in the administrative process</u>[.]" 127 F.3d at 1217 (emphasis added).

The second reason that the Court believes the Plaintiffs should be prohibited from asserting class claims is that, even if 29 C.F.R. § 1614.204(b) allowed a plaintiff to raise the class-certification issue for the first time in the federal-court action under certain circumstances, it would not do so under the facts of this case. Section 1614.204(b) allows a claimant to move for class certification "at any reasonable point in the process," which, it clarifies, refers to "when it becomes apparent that there are class implications to the claim." The Court believes that class implications were likely always present in this case, as the Court alluded in its analysis in Section II of this opinion. Even if no class implications existed when a Navajo employee -- one of many Navajo employees that Salazar employs -- filed an EEO complaint alleging racial/ethnic discrimination based on her Navajo heritage, such implications clearly existed when witnesses to the administrative hearing began testifying to discriminatory conduct against Navajos generally. Section 1614.204(b) thus required the Plaintiffs to raise the class certification issue "at [a] reasonable point in the process" after that testimony came out. And the regulation requires the administrative judge to deny leave to promote the suit to a class action if the plaintiff unduly delays in bringing the class-action issue to the administrative judge's attention. The Court finds that the point at which the plaintiff files a civil action in federal court is not a "reasonable point in the process" and that waiting until the administrative process is complete -- at least where the Plaintiffs were aware of the class implications of the suit before that point -- is undue delay. If the administrative judge were faced, at this point in the proceeding, with whether to allow the case to proceed as a class action, the Court

is confident the administrative judge would conclude that § 1614.204(b) requires that he or she deny the request based on undue delay.  This undue delay provides the Court with additional reason to grant Salazar's motion to dismiss the class claims.

## IV.     THE PLAINTIFFS HAVE NOT ESTABLISHED THAT EXHAUSTION OF CLASS ADMINISTRATIVE REMEDIES WOULD BE FUTILE.

The Plaintiffs' final argument is that they do not have to exhaust class administrative remedies because such exhaustion would be futile.  See Response at 13-14.  They assert that class administrative action would be futile, because the agency at issue has already concluded, in response to the Plaintiffs individual complaints, "that there is no evidence to indicate that the Agency officials harbored a discriminatory animus toward members of the Navajo tribe."  Response at 13  (internal quotations omitted).  Salazar argues that requiring class exhaustion would not be futile because "a dismissal of Plaintiffs' class claims would not hinder their individual complaints."  Reply at 10.  Salazar distinguishes all of the authority the Plaintiffs cite in support of their exhaustion argument as involving disabled children and asserts that there is no authority supporting a futility exception in the Title VII context.  See Reply at 11.  Finally, Salazar argues that the administrative ruling on the individual complaints does not necessarily establish that a class complaint would fail in a similar manner.  See id.  The Court agrees with the some of Salazar's arguments.

The Plaintiffs fail to point to a Title VII case identifying a futility exception to the administrative-exhaustion requirement.  See Response at 12 (citing McQueen v. Colo. Springs Sch. Dist. No. 11, 488 F.3d at 874 (stating, in the context of an Individuals with Disabilities Education Act ("IDEA") claim, that "exhaustion is not required where it would be futile or fail to provide adequate relief")(alterations omitted); N.M. Assoc. for Retarded Citizens v. New Mexico, 678 F.2d 847, 850 (10th Cir. 1982)(stating, in the context of a Rehabilitation Act claim, that "[i]mprobability

of obtaining adequate relief by pursuing administrative remedies is often a reason for dispensing

with the exhaustion requirement."); and Hoeft v. Tucson Unified Sch. Dist., 967 F.2d 1298, 1303-04

(9th Cir. 1992)(stating, in the context of an IDEA claim, that exhaustion should be excused where

"it is improbable that adequate relief can be obtained by pursuing administrative remedies.")).  The

Plaintiffs thus have no support for the proposition that this judicially created futility exception

applies in the Title VII context.

      Moreover, the Plaintiffs have not satisfactorily explained why exhaustion would be futile.[11]

The Court believes that exhaustion would not be futile, because requiring exhaustion in this case will

serve the purposes of the exhaustion requirement by making sure the agency is on notice of the

precise nature of the claims against it and by promoting voluntary compliance with the civil-rights

laws.  It will also allow the administrative judge, in the first instance, to judge Woodward and

McCabe's adequacy as class representatives.  Furthermore, requiring the Plaintiffs to exhaust the

class administrative remedies will not compromise their individual claims; those claims are as strong

factually as they will ever be.  The only hindrance the Plaintiffs suffer from the Court's ruling is that

they will not have the bargaining chip of a potentially costly class action to aid their settlement

negotiations.  The law does not mandate, however, that plaintiffs bringing Title VII claims have such

leverage.  The Court will not circumvent the administrative scheme to give the Plaintiffs a superior

---

      [11] The two possible grounds for futility appear to be: (i) because the administrative judge found their individual claims lacked merit, they would be inadequate class representatives; and (ii) if the administrative judge thought they did not have individual claims, it likely would not find there are class claims.  The first ground is a sound reason to require exhaustion, because other clients and attorneys might have a good claim where the Plaintiffs do not.  The administrative process may have identified different or better class representatives.  If the Court were to recognize the second ground, on the other hand, the rationale would practically swallow the exhaustion rule.  The Plaintiffs' individual claims may be weak, while the class claims, with a different representative, might achieve a different result.  In other words, the administrative process is important; it may yield different results because the class claims must get through the process.

bargaining position for settlement now, when their claims might have been settled in the administrative proceeding if they had put Salazar on notice that the suit was a class action.

Finally, the Court's order will not deny any other potential class members a remedy for the agency's alleged violation of the civil-rights laws.  Those employees may bring individual EEO complaints or may bring the class action contemplated in this case, and use their individual claim of discrimination as the basis upon which a court might find he or she is an adequate class representative.  Indeed, given the agency's determination that there was no discriminatory animus, it is the Plaintiffs' actions that risk depriving the would-be class members of their ability to vindicate the wrongs alleged.  If the Court were to allow this case to go forward as a class action on evidence that an administrative judge found deficient, it is possible that the Court will agree with the administrative judge's decision and dismiss the claims based on a lack of evidence of discriminatory animus, at which point the doctrine of preclusion might bar the class members from asserting their own, individual claims.  See, e.g., Foster v. St. Jude Med., Inc., 229 F.R.D. 599, 604-05 (D. Minn. 2005)(finding a class representative inadequate for having conflicting interests with the class, because, "[g]iven the principles of res judicata, another court may well find that the class members' compensatory damages claims, if any, should have been litigated in this lawsuit"); Martin v. Home Depot U.S.A., Inc., 225 F.R.D. 198, 204 (W.D. Tex. 2004)(holding that a class representative who is willing to forego some claims might be inadequate because, "[u]pon a final judgment, unasserted property and personal injury damages will be forever barred by operation of res judicata -- for all class members."); Pearl v. Allied Corp., 102 F.R.D. 921, 924 (E.D. Pa. 1984) (finding that "class members whose claims would be abandoned by the plaintiffs may find themselves precluded by the doctrine of res judicata from asserting those claims in subsequent actions.").  This possibility further strengthens the Court's resolve in concluding that this case is not

appropriate to bring as a class action.  The Court thus grants Salazar's motion and dismisses the Plaintiffs' class claims.

**IT IS ORDERED** that the Defendant's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1) is granted in part.  The class claims are dismissed.  Because the dismissal is for lack of subject matter jurisdiction, however, the Court dismisses the class claims without prejudice to their being re-raised if one or more Plaintiffs or putative class members exhausts the administrative process for seeking class relief.

 

 

 

_____
UNITED STATES DISTRICT JUDGE

*Counsel*:

Jeffrey A. Dahl
Keleher & McLeod, P.A.
Albuquerque, New Mexico

      *Attorneys for the Plaintiffs*

Gregory J. Fouratt
  United States Attorney
Phyllis A. Dow
  Assistant United States Attorney
United States Attorney's Office
Albuquerque, New Mexico

      *Attorneys for the Defendant*